UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM DIVISION

CASE NO. 22-CR-80022-CANNON

UNITED STATES OF AMERICA

v.

DANIEL M. CARVER,
THOMAS DOUGHERTY,
JOHN PAUL GOSNEY JR.,
LOUIS CARVER,
ETHAN MACIER, and
JOSE GOYOS,

                       **Defendants**.

_____/

## GOVERNMENT'S OPPOSITION TO DEFENDANT GOSNEY'S MOTION TO DISMISS FRAUD AND MONEY LAUNDERING COUNTS OF THE INDICTMENT

### I.     INTRODUCTION

On February 24, 2022, a federal grand jury returned an indictment charging Defendant John Paul Gosney Jr. and others with crimes related to health care fraud, wire fraud, kickback, and money laundering conspiracies. By returning this indictment, the grand jury determined that there was sufficient probable cause to find that the defendant and his coconspirators intended to defraud Medicare. Prior to any evidence being presented to a jury at trial in this matter, however, Defendant Gosney has filed the present motion seeking to dismiss certain counts based on the sufficiency of the evidence—what he calls "a flawed theory of prosecution."[1] [ECF. No 350 at 1]. Notably, Defendant Gosney does not cite any legal authority to support the extraordinary relief requested—dismissing counts at this stage of the prosecution despite a probable cause finding by

_____

[1] Defendants Daniel M. Carver, Thomas Dougherty, Ethan Macier, and Jose Goyos joined the motion. Defendant Louis Carver does not appear to have joined the motion.

the grand jury.  Yet, the U.S. Supreme Court has squarely held that there is no "authority for looking into and revising the judgment of the grand jury upon the evidence, for the purposes of determining whether or not the finding was founded upon sufficient proof." *United States v. Kaley*, 571 U.S. 320, 328 (2014).  Instead, as the counts at issue in the indictment track the statutory language, clearly and concisely explain the crimes charged to put the defendants on notice, and sufficiently allege all elements of the charged offenses (as well as the facts and circumstances pertaining to them)—which is all that is required under the law—this Court should deny the defendant's motion to dismiss (or, alternatively, reserve ruling until a proper motion for judgment of acquittal is filed, pursuant to Federal Rule of Criminal Procedure 29(a), after the close of evidence).

## II.     BACKGROUND AND PROCEDURAL HISTORY

On February 24, 2022, a grand jury sitting in the Southern District of Florida returned an indictment charging, among others, Daniel M. Carver, Thomas Dougherty, John Paul Gosney Jr., Louis Carver, Ethan Macier, and Jose Goyos  (collectively the "Remaining Defendants"), for their respective roles in health care fraud, wire fraud, kickback, and money laundering offenses.[2]  [ECF No. 23.]

---

[2] Defendant Gosney's motion relies primarily on his interpretation of evidence presented in a criminal complaint charging Defendants Michael and Galina Rozenberg [ECF No. 1] as well as additional evidence proffered during Defendant Michael Rozenberg's preliminary hearing related to that criminal complaint [ECF No. 19].  *First*, Defendant Gosney is charged by indictment after a probable cause finding by the grand jury.  He was not charged by criminal complaint. *Second*, the evidence presented in the Rozenbergs' criminal complaint and at Defendant Michael Rozenberg's preliminary hearing related to a conspiracy period dated October 20, 2020, through July 31, 2021, and focused solely on Defendants Michael and Galina Rozenberg's involvement in the alleged health care fraud scheme—of which both defendants have since pled guilty.  Notably, Defendant Gosney (as well as the other remaining defendants) have been charged for their role in a health care fraud and wire fraud conspiracy commencing in January 2020—approximately ten months before the allegations in the Rozenbergs' criminal complaint.  *See* [ECF. Nos. 1 and 23].

As alleged in Count One of the indictment, Defendant Gosney (and the other Remaining Defendants) were charged with conspiracy to commit wire fraud and health care fraud related to a scheme to defraud Medicare, which spanned from January 2020 through July 2021.  Specifically, Count One alleges that the defendants:

> did knowingly and willfully, that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, including with John Mamone and Joseph Mamone, to commit offenses against the United States, that is:
>
> > a.   to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and
> >
> > b.   to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, to knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

[ECF. No. 23 at 12–13].

Count One further alleges that the purpose of the conspiracy was for the coconspirators to unlawfully enrich themselves by, among other things:

> (a) paying and receiving kickbacks and bribes in exchange for the referral of Medicare beneficiaries and doctors' orders for DME and genetic testing, and other documentation necessary to submit claims to Medicare (collectively, "doctors' orders"), without regard to any medical necessity for the prescribed DME and genetic testing;
>
> (b) paying kickbacks and bribes to telemedicine companies in exchange for ordering and arranging for the ordering of DME and genetic tests for Medicare

beneficiaries, without regard to the medical necessity of the prescribed genetic tests or whether the tests were eligible for Medicare reimbursement;

(c) falsifying and causing the falsification of Medicare enrollment forms to conceal the beneficial ownership of, and managing control over, CERGENA, PROGENIX, and THERAGENE;

(d) submitting and causing the submission, via interstate wire communication, of false and fraudulent claims to Medicare for either DME or genetic testing that was not medically necessary and not eligible for Medicare reimbursement;

(e) concealing and causing the concealment of the submission of false and fraudulent claims to Medicare; and

(f) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

[*Id.* at 13–14].  Count One also alleges sixteen separate paragraphs outlining the manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy.  *See* [ECF No. 1 at 14–17].

Counts Four through Six allege that the defendants:

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said healthcare benefit program.

[ECF No. 23 at 18].  The indictment also alleges specific acts related to the purpose of the health care fraud scheme and artifice, and it explicitly details each substantive health care fraud count (such as information related to the Medicare beneficiary, date of submission, claim number, and description of the claim).  [*Id.* at 18–20].

Count Fourteen alleges that the defendants conspired to commit money laundering, in violation of Title 18, United States Code, Section 1956(h), with the following objects:

4

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly, combine, conspire, and agree with each other and with others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Sections 1956 and 1957, that is,

> a.   to knowingly conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

> b.   to knowingly engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

> It is further alleged that the specified unlawful activity is conspiracy to commit health care fraud and wire fraud, in violation of Title 18, United States Code, Section 1349; health care fraud, in violation of Title 18, United States Code, Section 1347; and receipt of kickbacks in connection with a Federal health care program, in violation of Title 42, United States Code, 1320a-7b(b)(1)(A).

[*Id.* at 27–28].

Finally, Counts Fifteen through Nineteen charge substantive counts of concealment money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and allege that the defendants:

> did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity . . . .

[*Id.* at 28].

On October 7, 2022, Defendant Gosney filed the underlying Motion to Dismiss Fraud and Money Laundering Counts of the Indictment. [ECF No. 350].[3] On October 7, 2022, Defendant Thomas Dougherty joined the motion. [ECF No. 355]. On October 13, 2022, Defendants Jose Goyos and Ethan Macier joined the motion. [ECF Nos. 371 and 372]. And on October 14, 2022, Defendant Carver joined the motion. [ECF No. 378]. The Court ordered the government to file a response on or before October 17, 2022.

### III.    LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b) governs motions to dismiss an indictment. Fed. R. Crim. P. 12(b). "[A] defendant may challenge an indictment on a variety of . . . grounds, including for failure to state an offense, lack of jurisdiction, double jeopardy, improper composition of the grand jury, and certain types of prosecutorial misconduct." *United States v. Kaley*, 677 F.3d 1316, 1325 (11th Cir. 2012). There is, however, "no summary judgment procedure in criminal cases as the rules do not provide for a pre-trial determination of sufficiency of the evidence." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992). Instead, "an indictment 'fair upon its face, and returned by a 'properly constituted grand jury . . . conclusively determines the existence of probable cause" to believe the charged offenses have been committed. *Kaley*, 571 U.S. at 328 (citing *Gerstein v. Pugh*, 420 U.S. 103, 117, n.19 (1975). Indeed, there is no "authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof." *Id*. (citations omitted). Instead, "the whole history of the grand jury institution demonstrates that a

---

[3] Defendant Gosney does not seek to dismiss Count Seven (conspiracy to pay and receive health care kickbacks) and Counts Ten through Thirteen (substantive kickback offenses). Also, the defendants that joined the motion have not sought to dismiss Counts Two through Three and Counts Twenty through Twenty-Two.

challenge to the reliability or competence of the evidence supporting a grand jury's finding of probable cause will not be heard." *Id.* (internal citations and quotations omitted).  In terms of sufficiency, "[t]he grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime." *Id*.

As a result, "[t]he sufficiency of a criminal indictment is determined from its face." *Id.*  An indictment is sufficient if it charges in the language of the statute.  *Id.*; *see also United States v. Cole*, 755 F.2d 748, 759 (11th Cir. 1985) ("[A]n indictment must be sufficiently specific to inform the defendant of the charge against him and to enable him to plead double jeopardy in any future prosecution for the same offense. An indictment satisfies these requirements as long as the language therein sets forth the essential elements of the crime."); *United States v. Yonn*, 702 F.2d 1341, 1348 (11th Cir. 1983), cert. denied, 464 U.S. 917, 104 S.Ct. 283, 78 L.Ed.2d 261 (1983) (Constitutional requirements are fulfilled "by an indictment that tracks the wording of the statute, as long as the language sets forth the essential elements of the crime"); *United States v. Dabbs*, 134 F.3d 1071, 1079 (11th Cir. 1998) ("[A]n indictment [is] sufficient if it (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense."); *United States v. Northcutt*, No. 07-60220-CR, 2008 WL 162753, at *2 (S.D. Fla. Jan. 16, 2008) (*citing United States v. Walker*, 490 F.3d 1282, 1296 (11th Cir. 2007)) ("An indictment that tracks the language of the relevant statute is sufficient, as long as it also provides a statement of facts and circumstances that give notice of the offense to the accused.").

IV.    ARGUMENT

Defendant Gosney's motion should be denied because it is, in essence, challenging the sufficiency of the evidence.  *See* [ECF No. 350] (moving to dismiss "based on a flawed theory of prosecution").  *First,* it is well established that "a defendant cannot challenge whether there is a sufficient evidentiary foundation to support the grand jury's probable cause determination."[4]  *United States v. Kaley*, 677 F.3d 1316, 1326 (11th Cir. 2012).  *Second*, as Defendant Gosney cannot challenge the sufficiency of the evidence, at best, he is asking the Court to review whether the indictment sufficiently states an offense.  It does.  As discussed below, the indictment is sufficient and meets all the requirements of Rule 7(c)(1).  *Finally*, although Defendant Gosney's motion should be denied outright now, to the extent the Court reserves its ruling until Defendant Gosney or any other defendant files a motion for judgment of acquittal, the government seeks to preliminarily respond to the defendants' argument.

A.    <u>Defendant Gosney Cannot Challenge the Sufficiency of the Evidence at this Stage of the Proceedings.</u>

Over 100 days before jury selection and before any evidence has been presented at trial, Gosney challenges the "theory of prosecution," contending that the government will have insufficient evidence at trial to meet the elements of the charged fraud and money laundering offenses.  *See, e.g.,* [ECF No. 350] (". . . the lack of any evidence impeaching any medical

---

[4] Defendant Gosney is particularly aware of this standard as this Court has already rejected a nearly identical attempt to second-guess the grand jury's probable cause finding.  *See* ECF No. 256 (Order on Notice of Intent and Denying Motion to Vacate Retraining Order) ("Gosney's arguments on the merits all reduce to a claim that neither he nor his co-defendants committed the charged crimes or obtained any significant amount of money from improper Medicare claims. That determination, however, *falls within the sole province of the grand jury* under Supreme Court's binding decision in *Kaley*.") (emphasis added).

certification leads to the opposite conclusion . . . .").  This challenge presents a factual dispute that falls squarely within the province of the jury.

At trial, the government will present evidence demonstrating that each of the Remaining Defendants knowingly and voluntarily joined in a conspiracy, which involved two or more persons, and agreed to commit health care fraud and wire fraud, which includes evidence that, during the charged conspiracy period, each knowingly executed or attempted to execute a scheme or artifice to defraud Medicare by using false or fraudulent pretenses, representations, and promise. *See* Eleventh Circuit Pattern Criminal Jury Instructions §§ O53.1 and 054 (last revised March 2022).  This evidence will include testimony and documents demonstrating, among other things, that the defendants and their co-conspirators:

    i.    conducted deceptive telemarketing campaigns targeting the blind, elderly, and disabled (Medicare beneficiaries);

    ii.    lied to Medicare beneficiaries in an effort to deceive, trick, or confuse the beneficiaries: into believing that the caller was affiliated with Medicare; to provide their Medicare number and primary care physician's contact information to the telemarketer; and that the Medicare beneficiaries qualified for a "free" DME or genetic testing;

    iii.    used a front company on the deceptive fax cover sheets the conspirators sent to medical providers;

    iv.    pre-filled doctors' orders for DME and genetic tests containing false representations related to the Medicare beneficiaries' diagnosis, symptoms, and procedures;

    v.    pre-filled doctors' orders to select gene panels that maximize the reimbursement from Medicare, regardless as to medical necessity and eligibility for reimbursement;

    vi.    paid kickbacks to telemedicine companies to sign pre-filled doctors' orders for DME and genetic testing;

    vii.    received kickbacks from marketing companies, DME companies, and laboratories in exchange for signed doctors' orders for DME or genetic testing;

viii.  altered, forged, and back dated doctors' orders;

ix.  operated a doctor chase unit that lied to primary care physicians (and other medical providers) falsely claiming that certain Medicare beneficiaries were their "patients" and that the Medicare beneficiaries requested certain genetic testing;

x.  employed a convicted felon (recently released from home confinement after serving a federal prison sentence following a wire fraud conviction related to his role in managing a deceptive telemarketing scheme) as the "manager" of the doctor chase unit;

xi.  recruited employees from addiction facilities to work as telemarketers (including within the doctor chase unit) and paid them cash incentives to close "deals," which included an opportunity to spin a money wheel each time a telemarketer obtained a signed doctors' order;

xii.  received complaints from medical providers and Medicare beneficiaries informing the conspirators that the medical providers did not order the genetic tests and that the Medicare beneficiaries did not request, need, or want the tests;

xiii.  filed false enrollment records with Medicare;

xiv.  concealing from Medicare the beneficial ownership and managing control of Defendants Carver, Dougherty, and Gosney (each of which was a convicted felon);

xv.  owned shell laboratories that contained, in essence, only a microwave, table, and a folding chair, and did not have the capability to conduct a single test— and, indeed, did not conduct a single test;

xvi.  as for certain genetic testing, referenced out genetic tests to a laboratory in California for approximately $400/test and then submitted claims to Medicare for each test for up to $10,000;

xvii.  submitted or caused the submission of false and fraudulent claims to Medicare for DME or genetic testing that was not medically necessary and not eligible for Medicare reimbursement;

xviii.  received tens of millions of dollars in fraud and kickback proceeds;

xix.  funneled millions of dollars of fraud and kickback proceeds through shell companies and layers of financial transactions; and

xx.     spent fraud and kickback proceeds lavishly.[5]

That evidence, along with other evidence the government will present, is more than sufficient for the jury to conclude that the defendants intended to defraud Medicare. *See, e.g.*, *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987) ("[A] court may not dismiss an indictment … on a determination of facts that should have been developed at trial."); *United States v. Brantley*, 461 F. App'x 849, 851 (11th Cir. 2012) ("'There is no summary judgment procedure in criminal cases ….'") (quoting *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992)).[6]

---

[5] This list outlines a summary of what the government expects the evidence will show at trial.  The government expects to prove its case through, among other evidence, the testimony of cooperating co-conspirator witnesses, former employees of the defendants and their companies, former beneficiaries who had bills submitted to Medicare by defendants' laboratories or other DME companies or laboratories, and employees of providers (laboratories and durable medical equipment companies) that the defendants sold doctors' orders to, expert witnesses, a forensic accountant, and other witnesses and documents, including e-mails, text messages, recordings, contracts, financial records, Medicare enrollment records, billing data, and summary exhibits.

[6] Similar to Defendant Gosney's motion, in *United States v. Rhame*, the defendants moved to dismiss an indictment charging them with conspiracy to commit mail fraud and wire fraud stemming from material misrepresentations and omission facts to obtain investors in their business to exchange exotic currencies, including the Iraqi dinar.  *Id.*, at No. 1:16-CR-67-SCJ-CMS, 2017 WL 9474217 (N.D. Ga. Jan. 31, 2017).  Specifically, the defendants argued that the "alleged victims . . . got exactly what they paid for at the correct price . . . [J]ust as the businessmen in *Takhalov* got what they paid for (drinks with women), the purported victims in this case got what they paid for (Iraqi dinar at the market price)."  *Id.* at *8.  Rejecting this argument and denying the motion, the court stated,

> [t]he problem with this argument is that it does not address whether the indictment has sufficiently alleged an offense. While Defendants may expect to show at trial that the worst they did was act in a deceitful way and that they did not intend to defraud or obtain money or property from anyone, the allegations in the indictment certainly allow for the Government's theory that Defendants did more than perpetrate an innocent 'trick' on investors.

*Id.* (emphases added)

**B.  The Indictment Sufficiently Alleges Fraud and Money Laundering.**

To the extent the Court construes Defendant Gosney's motion to dismiss as alleging a failure to state a claim, the motion should be denied because the language in the indictment for Counts One, Four through Six, Fourteen, Fifteen, Seventeen, and Nineteen "is plain, concise, and definite written statement of the essential facts constituting the offense[s] charged."  Fed. R. Crim. P. 7(c)(1).

"An indictment is sufficient if it: (1) presents the essential elements of the charged offense; (2) notifies the accused of the charges to be defended against; and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense."  *United States v. Steele*, 147 F.3d 1316, 1320 (11th Cir. 1998). It is generally enough for an indictment to track statutory language—which this Indictment has [ECF No. 23]—as long as the indictment sets forth all the elements necessary to constitute the offense intended to be punished, *United States v. Johnson*, 981 F.3d 1171, 1179 (11th Cir. 2020), *cert denied*, 142 S. Ct. 567 (2021), and "also provides a statement of facts and circumstances that give notice of the offense to the accused."  *United States v. Walker*, 490 F.3d 1282, 1296 (11th Cir. 2007).  The thirty-three-page indictment returned in this case meets that standard.  *See* [ECF No. 23].

Here, each of the challenged counts tracks the respective statutory language nearly verbatim.  Additionally, Count One (conspiracy to commit health care fraud and wire fraud) contains additional allegations related to the purpose and manner and means to accomplish the alleged conspiracy.  [ECF No. 23 at 12–17].  The indictment also includes introductory allegations related to the Medicare program, requirements related to claim submission and enrollment, coverage for DME and genetic testing, telemedicine, shell lab rule, and a summary of the

individuals and entities involved in the charged offenses.  *Id.* at 1–12.  Also, the substantive health care fraud offenses, conspiracy to commit money laundering, and substantive money laundering offenses track the statutory language and meet the standard set forth above.

As a result, the Court should deny Defendant Gosney's motion.

## C.  Defendant Gosney's Arguments Should be Reserved for a Rule 29 Motion.

Finally, Defendant Gosney's challenge to the sufficiency of the evidence should be raised *after the government closes its evidence* (or after the close of all the evidence), at which point the defendants may file a motion seeking a "judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).

Although not ripe for the Court's consideration at this stage—as the Court's review should not occur until, at least, after the government closes its evidence at trial and a Rule 29 motion is submitted—the Court should nonetheless remain suspect of the defendants' argument in support of dismissal.  Primarily, because Defendant's Gosney's argument is rooted in, essentially, two flawed legal premises: (i) that "a doctor's medical certification of necessity is a clinical medical judgment that cannot be second-guessed other than by proving it is the produce of an objective falsehood" [ECF No. 50 at 15]; and (ii) under the narrowly-applied holding in *United States v. Takhalov*, 827 F.3d 1307 (11th Cir. 2016), the defendants did not intend to harm (defraud) Medicare.

*First*, a clinical laboratory's services are not medically necessary simply because a doctor orders them.  The Eleventh Circuit has made clear that "[a] doctor's prescription is not a get-out-of-jail-free card."  *United States v. Grow*, 977 F.3d 1310, 1321 (11th Cir. 2020) (affirming defendant's conviction and rejecting argument that there was no intent to defraud doctors ordered the medically unnecessary prescriptions).  Indeed, Courts have "found sufficient evidence of

healthcare fraud or conspiracy to commit healthcare fraud even where a doctor prescribed the treatment or medication." *Id*.; *see United States v. Ignasiak*, 667 F.3d 1217 (11th Cir. 2012) (affirming doctor's conviction for health care fraud for prescribing unreasonable and excessive quantities of controlled substances without a legitimate medical purpose); *United States v. Mateos*, 623 F.3d 1350 (11th Cir. 2010) (affirming health care fraud convictions for doctor and nurse despite doctors ordering medically unnecessary treatments).  As such, Medicare does not cover diagnostic testing that is "not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member," 42 U.S.C. § 1395y(a)(1)(A), even if ordered by a doctor.

The fact that clinical laboratories can rely on a doctor's determination of medical necessity does not preclude the order from being fraudulent.  The indictment alleges that the defendants caused submissions of false and fraudulent claims to Medicare that were not medically necessary and not eligible for reimbursement [ECF No. 23 at 15–17].  Like *Grow*, the doctors' orders were used to further the scheme to defraud.  *Id*., 977 F.3d at 1321; *Ignasiak*, 667 F.3d 1217; *Mateos*, 623 F.3d 1350.  As a result, Gosney's reliance on *United States ex rel. Groat v. Bos. Heart Diagnostics Corp.*, 296 F. Supp. 3d 155 (D.D.C. 2017) is misplaced.  Although the court noted that "a laboratory may rely on the ordering physician's determination of medical necessity in the laboratory's certification to the [U.S. Department of Health and Human Services]," *id* at 158, it ultimately held that the relator had sufficiently alleged fraud and that "laboratories have a legal duty to ensure that they do not submit claims for medically unnecessary tests."  *Groat* relied heavily on the Publication of OIG Compliance Program Guidance for Clinical Laboratories, 63 Fed. Reg. 45076-03 (Aug. 24, 1998) which specifically states that "the laboratory should construct [its] requisition form to ensure that the physician or other authorized individual has made an

independent medical necessity decision with regard to each test the laboratory will bill" and that laboratories "should require honest, straightforward, fully informative and non-deceptive marketing." *Id*. Defendants here did neither. Instead, the defendants owned and controlled both the laboratories that submitted the false and fraudulent claims and the call center network that procured the conducted the deceptive marketing and procured the false and fraudulent doctors' orders (which lacked medical necessity and were not eligible for reimbursement). Indeed, Defendant Gosney acknowledged that his telemarketers engaged in deceptive marketing practices to convince their primary care physicians to sign off on the genetic testing order engineered in a boiler room. [ECF No. 350 at 8]. The primary care physicians were coaxed into signing requisition forms that were configured to invariably bill Medicare at the highest reimbursement amounts.

At trial, the government will present evidence that—thousands of claims submitted through Cergena Laboratories, LLC, Progenix Lab, LLC, Theragene Diagnostics, LLC, and Laboratory 1—were each procured through a process that deceived Medicare beneficiaries and medical providers, and ultimately deceived and defrauded Medicare (the victim of the alleged scheme). Additionally, the government will present evidence that—during the same conspiracy period—the defendants obtained doctors' orders: (i) from telemedicine doctors for DME and genetic testing that was not medically necessary and not eligible for reimbursement, which Defendants Daniel Carver, Thomas Dougherty, Louis Carver, Ethan Macier, and Jose Goyos sold to DME companies, laboratories, and marketing companies—including to Defendant Gosney and his DME and marketing companies—in exchange for kickbacks; and (ii) from forging doctors' orders or altering and back dating doctors' orders for DME and genetic testing. [*See* ECF No. 23 at 14–17].

*Second*, Defendant Gosney relies heavily on the holding in *Takhalov* to support his theory for dismissal: "[A] schemer who tricks someone to enter into a transaction has not 'schemed to defraud' so long as he does not intend to harm the person he intends to trick." 827 F.3d at 1313. In essence, Defendant Gosney claims that, despite deceiving patients, doctors, and Medicare, he did not intend to harm (defraud) Medicare.

This is a factual determination and cannot be analyzed until the government has presented its evidence to the jury. However, based on the anticipated evidence, it is likely the facts presented at trial will differ substantially from the narrow set of facts presented in *Takhalov*. In fact, courts have consistently rejected similar attempts to draw comparison to *Takhalov*. For example, in *United States v. Eyerman*, the defendant appealed several convictions, including wire fraud, for obtaining investments in fabricated business ventures. 838 F. App'x 416, 421 (11th Cir. 2020). Rejecting the defendant's argument under *United States v. Takhalov*, 827 F.3d 1307 (11th Cir. 2016) and affirming the convictions, the Eleventh Circuit recognized that the defendant defrauded the victim by deceiving him into investing in the business ventures and noted that "[defendant's] argument fails because, . . , there was ample evidence from which the jury could conclude that [defendant] did intend to harm [the victim] with his deceit." *Eyerman*, 838 F. App'x at 421 n.4; *see also United States v. Kachkar*, No. 19-12685, 2022 WL 2704358, at *6 (11th Cir. July 12, 2022) (affirming wire fraud conviction and noting that "unlike in *Takhalov*, there is no question that Kachkar's misrepresentations went to the 'nature of the bargain itself,' and therefore harmed the bank if they misled the bank into entering into the transaction.").

Here, Defendant Gosney makes an evidentiary argument under *Takhalov* that misreads what the Indictment alleges. At trial, the government will present evidence demonstrating that Defendant Gosney's scheme to defraud was directed at Medicare—the patients' primary care

physicians and the patients themselves were told lies to perpetrate the scheme to deprive Medicare of money paid for claims that were medically unnecessary. Medicare is the health care benefit program and statutory victim, not the doctors that wrote orders for these benefits or the patients whose benefits were used. *See* Eleventh Circuit Pattern Criminal Jury Instructions §§ O53.1 and 054. Thus, in coaxing the patients' primary care physicians into writing both medically unnecessary orders and orders that were not eligible for reimbursement (despite promising Medicare not to do so) and disguising the full ownership in the laboratories because of his and his co-defendants' criminal histories, Defendant Gosney not only deceived Medicare, but also caused millions of dollars in harm. Medicare was misled because it simply would not have paid those claims without Defendant Gosney's (and others') misrepresentations. *Kachkar*, 2022 WL 2704358, at *6. Therefore, the Government intends there to be ample evidence that Defendant Gosney (and the other defendants) intended to harm Medicare with their deceit. *Eyerman*, 838 F. App'x at 421 n.4.[7] However, this analysis is not ripe for the Court's review, at this stage.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court deny Defendant Gosney's (and the joining defendants') Motion to Dismiss Fraud and Money Laundering Counts of the Indictment. Or, alternatively, respectfully requests that the Court reserve ruling on the motion after the government presents it evidence at trial. *See* Fed. R. Crim. P. 29(a). Also, as the legal standard set forth in *Kaley* is clear cut—there is no authority permitting Defendant Gosney to review, at this stage, "the judgment of the grand jury upon the evidence, for the purposes of determining whether or not the finding was founded upon sufficient proof"—the

---

[7] Defendant Gosney relies on additional authority that simply is unanalogous to this case. Specifically, *United States v. AseraCare, Inc.*, 938 F.3d 1278 (11th Cir. 2019) pertained to determining falsity under the False Claims Act, not the statutes charged in the indictment.

government respectfully requests that the Court deny the motion without hearing or oral argument.

*Kaley*, 571 U.S. at 328.


Dated: October 17, 2022                      Respectfully submitted,

                                             JUAN ANTONIO GONZALEZ
                                             UNITED STATES ATTORNEY
                                             SOUTHERN DISTRICT OF FLORIDA

                                             GLENN S. LEON, CHIEF
                                             CRIMINAL DIVISION, FRAUD SECTION
                                             U.S. DEPARTMENT OF JUSTICE

                                 By:         */s/ Patrick J. Queenan*

                                             Patrick J. Queenan
                                             Trial Attorney
                                             FL Special Bar No. A5502715
                                             U.S. Department of Justice
                                             Criminal Division, Fraud Section
                                             1400 New York Avenue, N.W.
                                             Washington, D.C. 20005
                                             Phone: (202) 875-0326
                                             patrick.queenan@usdoj.gov

                                             Reginald Cuyler Jr.
                                             Trial Attorney
                                             FL Bar # 0114062
                                             U.S. Department of Justice
                                             Criminal Division, Fraud Section
                                             12020 Miramar Parkway
                                             Miramar, Florida 33025
                                             Phone: (202) 748-3024
                                             reginald.cuyler.jr@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that, on October 17, 2022, I served and filed the forgoing document with the Clerk of the Court via ECF.

               By:     */s/ Patrick J. Queenan*