UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-80022-CR-CANNON/REINHART

UNITED STATES OF AMERICA

v.

DANIEL M. CARVER,
THOMAS DOUGHERTY,
JOHN PAUL GOSNEY JR.,
LOUIS CARVER, and
JOSE GOYOS,

      Defendants.

_____/

## GOVERNMENT'S RESPONSE TO DEFENDANT CARVER'S MOTIONS *IN LIMINE*

**I.    INTRODUCTION**

The government responds to Defendant Daniel Carver's Motions *in Limine* [ECF Dkt. 382 (the "Motion")]. In his Motion,[1] Defendant Carver asks the Court to exclude evidence of (1) drug use and addiction by Defendant Carver and anyone related to the conspiracy, (2) Defendant Carver's wealth or spending, (3) Defendant Carver's affiliations with organized crime, and (4) Defendant Carver's prior acts of violence. The government does not intend to introduce evidence of Defendant Carver's drug use, of his affiliations with organized crime, or of his prior acts of violence—unless Defendant Carver or another defendant opens the door to such evidence. *See, e.g.*, *United States v. Proctor*, 861 Fed. Appx. 760, 767 (11th Cir. June 16, 2021) (finding that district court properly admitted evidence of defendant's physical and emotional abuse of his co-defendant when defendant opened the door by claiming the co-defendant was a willing participant

---

[1] Defendant John Paul Gosney, Jr. filed a motion to adopt Defendant Carver's Motion, [ECF Dkt. 391], as did Defendant Thomas Dougherty. [ECF Dkt. 397]. The Court granted both motions. [ECF Dkt. 418]. Accordingly, the government's request that the Court deny Defendant Carver's Motion is also made to Defendants Gosney Jr.'s and Dougherty's adoptions of Carver's Motion, to the extent the government's arguments apply to them.

1

in a crime spree). Additionally, as to his drug use and prior criminal conduct, if Defendant Carver testifies, the government may seek to impeach him with such material.

The government does intend to introduce the highly probative evidence of Defendant Carver's wealth and use of the fraud proceeds, as well as of the fact that Defendant Carver and others hired employees from sober homes and the addiction recovery community to work as call center employees conducting deceptive telemarketing calls to both Medicare beneficiaries and primary care physicians, and, therefore, opposes Defendant Carver's Motion on these issues.

**II.      ARGUMENT**

   **A.      Evidence Relating to Drug Use**

In his Motion, Defendant Carver asks the Court to exclude essentially any mention of drug use relating to him or anyone else in the conspiracy. [ECF Dkt. 382 at 5]. Such a request is far too broad and should be denied. As a preliminary matter, the government does not intend to admit any direct evidence of drug use by Defendant Carver, his co-defendants, or others involved with the enterprise in its case-in-chief, unless Defendant Carver opens the door to such evidence as discussed below. The government does, however, intend to introduce evidence in its case-in-chief that Defendant Carver and his co-conspirators hired and recruited employees for their call centers from sober homes and from the addiction recovery community. The government also may introduce evidence of Defendant Carver's drug use if Carver opens the door or as impeachment evidence if Carver testifies. For example, the defendants may contend, as part of their defense, that they did not harbor the requisite mental state to commit the charged crimes because they relied, in good faith, on representations from Defendant Carver—or from others—that their business

2

model was legal.[2] If so, evidence that other defendants had knowledge of Defendant Carver's drug use—as well as other acts by Defendant Carver that would tend to vitiate such a defense—may be probative, relevant, and necessary to refute the good-faith defense.

### 1. Recruiting Employees from Sober Homes and Addiction Recovery Community

Evidence that Defendant Carver and others hired and recruited call-center employees from sober homes and from the addiction recovery community is probative as to Defendant Carver and his co-conspirator's intent to defraud in this case—and also probative to refute a good-faith defense. The government is not seeking to introduce this evidence to establish that the call center employees were drug users and thus must be criminals. Instead, this evidence is probative because it shows that Defendant Carver and others knowingly recruited individuals (many in dire financial circumstances) to conduct deceptive telemarketing calls as part of the scheme. Additionally, Defendant Carver and others knowingly used these employees—who were not licensed medical professionals and lacked medical training and education—to pre-populate laboratory requisition forms with supposed medical diagnoses and symptoms. Evidence of their backgrounds is highly relevant and probative because Carver's call center employees were deceiving beneficiaries into thinking that the call centers were affiliated with Medicare and that the beneficiaries qualified for genetic testing, in addition to populating requisition orders with the beneficiaries' medical conditions.

---

[2] The Eleventh Circuit Pattern Criminal Jury Instructions include **S17 Good-Faith Defense** instruction that provides:

"Good faith" is a complete defense to a charge that requires intent to defraud. A defendant isn't required to provide good faith. The government must prove intent to defraud beyond a reasonable doubt.

An honestly held opinion or an honestly formed belief cannot be fraudulent intent—even if the opinion or belief is mistaken. Similarly, evidence of mistake of judgment, an error in management, or carelessness can't establish fraudulent intent.

But an honest belief that a business venture would ultimately succeed doesn't constitute good faith if the Defendant intended to deceive others by making representations the Defendant knew to be false or fraudulent.

3

Other employees at the call centers—who also came from sober homes or from the addiction recovery community—were likewise representing to the beneficiaries' primary care physicians ("PCPs") that the beneficiaries were a "mutual patient" and that the beneficiaries requested the test, among other falsehoods. These representations were intended to deceive the PCPs into believing that entities associated with the scheme were legitimate medical providers sending legitimate medical requests for the PCPs' patients, when in fact Defendant Carver and others knew that nobody at his businesses had a patient-provider relationship with the beneficiaries. Defendant Carver's and others' recruitment of employees from places like sober homes is evidence of Defendant Carver's and the other defendants' knowledge of this issue, and it shows the actual execution of the conspiracy.

Additionally, as the defendants will likely advance a good faith defense, this evidence is highly probative and relevant to refute such a defense. The fact that Defendant Carver and others employed individuals from sober homes and the addiction recovery community—and motivated them by cash incentives—to put together requisition orders and faxes to PCPs is relevant to rebut this defense.

## 2. Drug Use as Impeachment Evidence

Under Eleventh Circuit case law, evidence of Defendant Carver's drug use during the time period of the indictment may be used to impeach him if he testifies. While the Eleventh Circuit has found that attempts to introduce evidence of drug use as a general attack on a witness's character are unduly prejudicial, it has also held that such evidence may be properly limited to "specific instances of drug use [during] relevant periods of trial and the transaction charged in the indictment." *United States v. Sellers*, 906 F.2d 597, 602 (11th Cir. 1990). In fact, the Eleventh Circuit pattern jury instructions contemplate the introduction of drug use evidence, stating that "a

4

witness may testify about events that occurred during a time when the witness was using addictive drugs, and so the witness may have an impaired memory of those events." See Eleventh Circuit Pattern Jury Instructions, § S1.3 ("Testimony of Accomplice, Witness Using Addictive Drugs, or Witness With Immunity") (last revised March 10, 2022).  Accordingly, if Carver testifies about events that occurred at a time when he was using drugs, he may be impeached using evidence of that drug use specifically.

The cases that Carver cites do not change this analysis.  One cited case, *United States v. Young*, addresses introducing evidence of trafficking convictions, including a conviction more than ten years old, in a trial where a defendant conceded he possessed controlled substances but claimed they were for personal use.  574 Fed. Appx. 896, 897 (11th Cir. 2014).  Unlike in *Young*, the government would not be seeking to introduce drug-related conviction outside the parameters of Rule 609 but may elect to present evidence of Defendant Carver's drug use during the pendency of the conspiracy as impeachment evidence if Carver chooses to testify.  The other cases that Defendant Carver cites are inapposite because they address the separate issue of impeaching a witness's credibility through evidence of a witness's drug use when that impeachment is a general character attack, and not related to whether the drug use relates to a "possible inability to recollect and relate." *See United States v. Gallardo*, 497 F.3d 727, 732-33 (7th Cir. 2007) (upholding district court allowing defense to present extrinsic evidence of witnesses' drug use only during the relevant time periods); *United States v. Thompson*, 538 F. Supp. 3d 1122, 1130 (D. Nev. 2021) (excluding defense from impeaching a domestic violence victim testifying about an assault with drug use unrelated to the charged conduct); *see also id.* (noting that the government moved to limit cross-examination about the victim's drug use "to the day of the incident").

### B. Carver's Wealth and Personal Spending

Defendant Carver and the other defendants, through their operation of marketing companies and shell labs, submitted and caused the submission of over $65 million in claims to Medicare for expensive and medically unnecessary genetic tests and durable medical equipment ("DME"), of which they were paid over $50 million (in addition to the amounts they received in kickbacks for referring signed DME orders and cancer genetic testing orders to other companies). Evidence of the use of these funds is direct evidence of the crimes charged and is also highly probative motive evidence, and, therefore, the government should be permitted to present such evidence in its case-in-chief.

The Eleventh Circuit and courts in this district routinely admit such evidence when the "evidence of wealth or extravagant spending" is "relevant to issues in the case and where other evidence supports a finding of guilt." *United States v. Bradley*, 644 F.3d 1213, 1271-72 (11th Cir. 2011) (holding in Medicaid fraud case that evidence of defendants' profit and spending "was probative of the defendants' motive, even if only slightly so"); *see also United States v. Hope*, 608 Fed. Appx. 831, 837 (11th Cir. 2015) (holding in health care fraud and money laundering case, "admission of evidence regarding Hope's wealth and luxury purchases was not erroneous because it was relevant to the issues in the case, and other evidence supports Hope's guilt"); *United States v. Amor*, 2015 WL 6438479, at *2 (S.D. Fla. Nov. 23, 2015) (Lenard, J.) ("A district court has broad discretion to admit the Government's wealth evidence so long as it aided in proving or disproving a fact in dispute.")

As with many evidentiary issues, whether evidence of the defendants' spending is admissible "must turn on the facts of each specific case." *Bradley*, 644 F.3d at 1271. Here, as alleged in the indictment, the money paid by Medicare was used to enrich Defendant Carver and

6

the other defendants and to further the fraud.  Additionally, as alleged in Counts 14–22, Defendant Carver and some of the other defendants also laundered these fraud proceeds through an intricate labyrinth of companies and bank accounts, including their personal accounts.  The money was ultimately used to fund their lifestyle, including luxury purchases such as jewelry, cars, and homes.  Also, the cash transactions noted by Defendant Carver in his Motion [ECF Dkt. 382 at 6-7], are partly attributable to the fact that Defendant Carver used straw owners to conceal his ownership in the business.  This concealment included omitting himself as a signatory to bank accounts to which Medicare paid reimbursements, which resulted in Defendant Carver and others to instruct straw owners—such as Defendant Louis Carver—to write checks to cash.

In addition, Defendant Carver's and the other defendants' use of fraud proceeds to make luxury purchases is relevant to their intent and motive.  As in many fraud cases, the government will argue that Defendant Carver and the other defendants committed fraud to make money so that they could fund their desired lifestyle.  Evidence that Defendant Carver's and the other defendants' lavish lifestyle was funded by fraud proceeds is therefore highly relevant to motive.  *See Hope*, 608 F. App'x at 839 ("The evidence also goes to Hope's motive to commit the offenses."); *Amor*, 2015 WL 6438479, *3 (finding account funds and "personal assets such as an airplane, waterfront home, and yacht" was "necessary to complete the story of the crime," "inextricably intertwined with evidence regarding the offenses," and "highly relevant to Defendant's motive for committing the crime of stealing government money—i.e., to fund his lifestyle and pay for luxury expenses.").

### C. Carver's Connections to Organized Crime

The government does not intend to introduce evidence of Defendant Carver's ties to organized crime unless Defendant Carver or another defendant opens the door to such evidence.

### D. Carver's Acts of Violence

As with Defendant Carver's connections to organized crime, the government does not intend to introduce evidence of Defendant Carver's acts of violence, either inside or outside of the time of the charged conspiracies, unless Defendant Carver testifies or he (or another defendant) otherwise opens the door to such evidence.

### CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny Defendant Carver's Motion and issue an order allowing the government to admit evidence in its case-in-chief of (i) Defendant Carver's recruitment of call center employees from sober homes and from the addiction recovery community; and (ii) Defendant Carver's wealth and personal spending. The government further requests that the Court deny Defendant Carver's remaining motions to the extent they would preclude the government from introducing impeachment evidence or rebut defenses—such as a good-faith defense—where Defendant Carver or another defendant opens the door to such evidence.

Dated: March 6, 2023

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

GLENN S. LEON
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

By: *Andrew Tamayo*
    Andrew Tamayo
    Trial Attorney
    FL Special Bar No. A5502970
    Patrick J. Queenan

Trial Attorney
FL Special Bar No. A5502715
Reginald Cuyler Jr.
Trial Attorney
Florida Bar No. 0114062
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
Patrick.Queenan@usdoj.gov
Reginald.Cuyler.Jr@usdoj.gov
Andrew.Tamayo@usdoj.gov
Phone: (202) 875-0326 (Queenan)
Phone: (202) 748-3024 (Cuyler)
Phone: (202) 794-4211 (Tamayo)

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on March 6, 2023, I caused the above Notice to be filed electronically via CM/ECF and served on all counsel of record.

*/s/ Andrew Tamayo*
Andrew Tamayo
Trial Attorney
U.S. Department of Justice
