**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA, **CASE NO. 22-CR-80022-DSL**

v.

DANIEL M. CARVER,

Defendant.
_______________________________________/

**DEFENDANT'S MEMORANDUM IN SUPPORT OF A REDUCTION OF SENTENCE PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 35(b)**

Defendant, DANIEL M. CARVER, by and through undersigned counsel, respectfully submits this memorandum pursuant to the Court's Order [D.E. 1281] in support of the Government's Motion for a Reduction of Sentence under Federal Rule of Criminal Procedure 35(b) [D.E. 1280], and in support of a reduction greater than the forty percent (40%) recommended by the Government. The Government agrees that Mr. Carver provided substantial assistance; the only question before the Court is the extent of the reduction that assistance warrants. For the reasons set forth below, Mr. Carver respectfully requests that the Court reduce his sentence by sixty-five percent (65%), from 200 months to 70 months' imprisonment.

## I. INTRODUCTION

Two facts define Mr. Carver's cooperation and set it apart from that of every other defendant in this case. First, all of it was rendered from custody, where Mr. Carver has remained continuously since 2021. The debriefings, the testimony at the trial of Jose Goyos, the preparation to testify a second time, and the assistance in other districts all took place while he was

incarcerated. Second, he is the only cooperating defendant who testified at a trial while in custody, assistance that carried a danger no cooperator at liberty had to bear. He took the stand against a former co-defendant knowing he would return not to his home, but to a cell, publicly identified as a Government witness.

The Government agrees that Mr. Carver provided substantial assistance, and the record bears out that his cooperation was among the most extensive in the case. Yet Mr. Carver is among the very few cooperating defendants whose sentence reflects no credit for that assistance. Most cooperating defendants received a substantial-assistance reduction at the time of sentencing under U.S.S.G. § 5K1.1; Mr. Carver did not, solely because his cooperation remained ongoing and could not be completed before he was sentenced. The present motion is the first and only occasion on which his assistance will be recognized. A forty-percent reduction does not reflect its value.

## II. LEGAL STANDARD

Upon the Government's motion, Rule 35(b) authorizes the Court to reduce a defendant's sentence to reflect substantial assistance in investigating or prosecuting another person. Fed. R. Crim. P. 35(b)(1). The extent of the reduction rests within the sound discretion of the Court, which is not bound by the Government's recommendation. In assessing the value of a defendant's substantial assistance, courts are guided by the factors set forth in U.S.S.G. § 5K1.1(a), including: (1) the significance and usefulness of the assistance; (2) the truthfulness, completeness, and reliability of the information and testimony provided; (3) the nature and extent of the assistance; (4) any injury suffered, or any danger or risk of injury to the defendant resulting from his assistance; and (5) the timeliness of the assistance. Each of these factors supports a substantial

reduction here. The fourth, the risk of injury to the defendant, applies to Mr. Carver with unusual force.

The present motion presents a single, narrow question: the value of Mr. Carver's cooperation. At Mr. Carver's sentencing, the Court applied the factors set forth in 18 U.S.C. § 3553(a) in imposing a sentence of 200 months, and expressly reserved for a future motion under Rule 35(b) any credit for Mr. Carver's cooperation, which remained ongoing and could not then be evaluated. The § 3553(a) considerations, including the seriousness of the offense and Mr. Carver's role in it, were thus fully accounted for in the sentence already imposed. What remains, and all that remains, is to assign value to the substantial assistance the Court reserved.

The reduction Mr. Carver seeks rests entirely on the value of that substantial assistance. The comparisons set forth below are offered as evidence of how comparable and lesser assistance has been valued in this very case, as reflected in the Government's filings and the Court's own sentencing records, and not as a disparity argument.

## III. THE NATURE, EXTENT, AND VALUE OF MR. CARVER'S SUBSTANTIAL ASSISTANCE

### A. Mr. Carver's guilty plea and immediate cooperation contributed to the resolution of the case against his co-defendants.

Mr. Carver pleaded guilty to Counts 1 and 7 of the Superseding Indictment on July 14, 2023, and began cooperating with the Government immediately following his plea. His guilty plea and his decision to cooperate were a significant factor in the resolution of the case against his co-defendants. His brother, Louis Carver, pleaded guilty that same day. John Paul Gosney, Jr. and Thomas Dougherty, who had been severed for a separate trial, each pleaded guilty on September

19, 2023, before that trial began and after Mr. Carver had pleaded and begun cooperating. Mr. Carver thus made the complete transition from defendant to Government witness.

**B. Mr. Carver testified for the Government at the Goyos trial.**

At the trial of Jose Goyos, held September 27 through October 6, 2023, Mr. Carver was sworn and testified as a witness for the Government on September 29 and October 2, 2023. He testified under oath, was subjected to cross-examination, and publicly identified himself as a cooperating witness. The jury returned a verdict of guilty against Mr. Goyos. Of all the defendants in this prosecution, only Mr. Carver and Ethan Macier testified at that trial.

**C. Mr. Carver was prepared and transported to testify a second time, and stood ready to do so.**

Mr. Carver's assistance did not end with the Goyos trial. He was subsequently prepared and transported from the Federal Correctional Institution in Memphis ("Memphis FCI"), where he was then designated, to South Florida to testify in an extensive health care fraud case. He stood ready, willing, and able to testify, and the defendants in that case pleaded guilty only as the trial was set to begin. That Mr. Carver did not ultimately take the stand does not diminish the value of this assistance. He did everything the Government asked of him. He prepared, he was transported, and he remained available until the pleas were entered. His demonstrated willingness to testify a second time was itself of value to the Government in securing those pleas. Further details regarding this assistance can be provided to the Court at the hearing.

**D. Mr. Carver cooperated across additional prosecutions in other districts and debriefed continuously throughout his incarceration.**

Beyond the two South Florida matters, Mr. Carver provided assistance in additional federal prosecutions in other districts. He was prepared to testify in an elaborate health care fraud prosecution in the Eastern District of Louisiana; the defendants there pleaded guilty. He was prepared to testify in a prosecution in the District of Colorado, the very matter whose pendency delayed the filing of the present motion. Those defendants, too, pleaded guilty. Throughout his incarceration, Mr. Carver debriefed with numerous agencies regarding wide-ranging health care fraud matters. That cooperation took place in every facility in which he was held, beginning immediately after his guilty plea and continuing until only a few months ago, when the final defendant in those matters pleaded guilty in 2026. Further details and information can be provided to the Court at the hearing.

**E. Mr. Carver testified and cooperated from custody, at significant personal risk.**

One feature of Mr. Carver's cooperation sets it apart from every other cooperating witness and bears directly on the § 5K1.1(a)(4) risk factor: Mr. Carver was the only cooperating defendant who testified at trial while himself in custody. He has been detained continuously since 2021. He therefore took the stand against a former co-defendant not from the safety of pretrial release, but as an inmate who would return to a correctional facility and the general population within it, publicly identified as a Government witness.

That risk was concrete, and it shaped where Mr. Carver could safely be held. His preparation to testify in the extensive health care fraud case described above required his transport to South Florida, where he was safe. He could not remain there, however, because that facility was only a detention center. The safety concern was his return to Memphis FCI, where his cooperation exposed him to serious danger. That concern was significant enough that the prosecutors handling

that matter, together with Department of Justice Trial Attorney Reginald Cuyler, discussed what could be done to protect him. Mr. Carver was nonetheless ultimately returned to Memphis, the attendant problems continued, and he was eventually transferred to FCI Fort Dix in New Jersey, where he remains today. The danger Mr. Carver assumed by cooperating, and the dislocation and hardship it caused him, is precisely what § 5K1.1(a)(4) directs the Court to credit, and it distinguishes his assistance from that of every cooperator who assisted from a position of liberty.

## IV. MEASURED AGAINST THE BENCHMARKS IN THIS CASE, THE VALUE OF MR. CARVER'S ASSISTANCE WARRANTS A REDUCTION GREATER THAN FORTY PERCENT

The Government's own filings and this Court's own sentencing records establish how substantial assistance has been valued in this case, and they confirm that a forty-percent reduction understates the value of Mr. Carver's assistance.

### A. The sentencing court consistently valued substantial assistance in this case well above the Government's recommendations.

Across the cooperating defendants sentenced in this case, the sentencing court consistently assessed the value of their substantial assistance as warranting reductions greater than the Government recommended. In each instance, the Court imposed a sentence below the range that the Government's recommended reduction would have produced:

| Defendant | Government's § 5K1.1 Request (resulting range) | Sentence Imposed by the Court (approx. reduction) |
|---|---|---|
| Ethan Macier | 45% (66–83 months) | 45 months (~63%) |
| Galina Rozenberg | 45% (66–83 months) | 48 months (~60%) |
| Timothy Richardson | 45% (59–74 months) | 24 months (~78%) |
| Ashley Cigarroa | 40% (58–72 months) | 30 months (~69%) |
| John Paul Gosney, Jr. | 35% (109–136 months) | 95 months (~43%) |
| Louis Carver | 30% (61–75 months) | 32 months (~63%) |
| Michael Rozenberg | 30% (55–68 months) | 48 months (~38%) |

This record is probative of the value of substantial assistance in this prosecution. It demonstrates that the Government's recommended percentage has repeatedly understated the reduction ultimately found warranted, and it supports a reduction greater than the forty percent the Government now recommends for Mr. Carver, whose assistance equaled or exceeded that of these defendants.

**B. A forty-percent reduction would leave Mr. Carver at the same term the Government sought for a non-cooperating defendant who was convicted at trial.**

A forty-percent reduction of Mr. Carver's 200-month sentence yields 120 months. That is the same term the Government urged the Court to impose on Jose Goyos, a defendant who exercised his right to trial, was convicted, never cooperated, and committed the instant offense while in a halfway house for a prior fraud. See Government's Supplemental Bench Memorandum [D.E. 1138]. The value of Mr. Carver's cooperation cannot be reflected in a reduction that leaves the most significant cooperator in the case at the identical term assigned to such a defendant.

**C. Mr. Carver has received no credit for his cooperation to date.**

Most cooperating defendants in this case received their substantial-assistance reductions at sentencing. Two did not: Mr. Carver and Thomas Dougherty, each of whose cooperation remained ongoing. As a result, Mr. Carver's 200-month sentence reflects no discount whatsoever for

assistance that is among the most extensive in the case. He should not be disadvantaged because the breadth of his cooperation, the very feature that makes it valuable, caused it to extend beyond his sentencing date. The present motion is the first and only vehicle to recognize that assistance, and the reduction should reflect its full value.

## V. THE REQUESTED REDUCTION

Measured against the benchmarks in this case, a sixty-five percent (65%) reduction appropriately reflects the value of Mr. Carver's assistance. Such a reduction would bring his sentence from 200 months to 70 months. That placement is a measured one. Mr. Carver does not ask to be treated most leniently; his resulting sentence would remain greater than those imposed on most of the cooperating co-defendants, which fairly accounts for his greater culpability. At the same time, the superior extent of his cooperation warrants a sentence below those of the two most culpable cooperators, John Paul Gosney, Jr. (95 months) and Thomas Dougherty. That cooperation included testimony at trial, a second trial-ready appearance, assistance across multiple districts, and the risk he uniquely assumed by cooperating from custody. That the Government itself recommends a greater reduction for Mr. Carver (40%) than for Mr. Dougherty (35%) confirms that Mr. Carver's cooperation is the more valuable of the two. A reduction to 70 months situates Mr. Carver exactly where the value of his cooperation places him: below the two most culpable cooperators, and above the rest.

## VI. CONCLUSION

For the foregoing reasons, Mr. Carver respectfully requests that the Court grant the Government's Motion for a Reduction of Sentence and reduce his sentence by sixty-five percent,

from 200 months to 70 months' imprisonment, together with such further relief as the Court deems just and appropriate.

Respectfully submitted,

FORMAN LAW GROUP, P.A.
4000 Ponce de Leon Blvd., Suite 480
Coral Gables, FL 33146
(305) 577-8888

By: /s/ Daniel H. Forman
Daniel H. Forman, Esq.
Florida Bar No. 0229261
daniel@formanlawgroup.com
Counsel for Defendant Daniel M. Carver

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 2, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve a copy on all counsel of record.

/s/ Daniel H. Forman
Daniel H. Forman, Esq.